IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

**FILED**

FEB 29 2016

Clerk, U.S. District Court
District Of Montana
Billings

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 14-73-BLG-SPW |
| Plaintiff, | |
| vs. | OPINION and ORDER on RESTITUTION |
| KEITH KUGLER, | |
| Defendant. | |

## I.    Introduction

On April 29, 2015, Kugler pled guilty to one count of possession of child pornography, in violation of 18 U.S.C. §2252A(a)(5)(B) and (b)(2).   Through computer forensics analysis, the FBI discovered 3,685 child pornography images and 83 child pornography videos on Kugler's laptop computer and over 14,992 child pornography images and 865 child pornography videos on Kugler's USB storage devices.   Kugler admitted that he had used various peer-to-peer networks including Ares (which also allowed for distribution), Limewire, Frostwire and Shareaza to acquire his child pornography.   Five of the victims depicted in the pornographic materials, "Angela," "Cindy," "Jane Doe," and "Sarah," and "C.U.," all of whom retained counsel, actively seek restitution in this case, as they have in many similar prosecutions across the United States.

1

"Jane Doe" submitted a restitution request of $52,500. "Cindy" submitted a restitution request of no less than $8,000. "Sarah" submitted a restitution request of $51,500.00. "Angela" submitted a restitution request of $12,100.20- $16,520.20. In its initial sentencing memorandum, the government suggested $3,000 in restitution for "Angela" and "Cindy;" $5,000 in restitution for "Sarah;" and $10,000 in restitution for "Jane Doe." (Doc. 38). Kugler opposed the restitution request and suggested in his sentencing memorandum $1,000 each in restitution for "Angela," "Sarah," and "Cindy" and $500 in restitution for "Jane Doe." (Doc. 36).

Kugler was sentenced on October 9, 2015. (Doc. 41). At that time, the parties advised the court that the government was requesting restitution on behalf of an additional victim, "C.U." The parties agreed to brief the additional restitution request and the court reserved its ruling on all restitution determinations at that time.

On October 23, 2015, the government made a $5,000 restitution request on behalf of "C.U." (Doc. 46). Kugler opposed the request and suggested $1,000 in restitution for "C.U." (Doc. 45). While the court was analyzing the restitution issue, the Ninth Circuit published *United States v. Galan,* 804 F.3d 1287 (9th Cir. 2015). According to *Galan,* it is error for the district court to impose restitution on distributors/possessors of child pornography "without first disaggregating the victim's losses, including ongoing losses, caused by the original abuse from the

2

losses caused by the ongoing distribution and possession of the images of the original abuse." *Id.* at 1291.

In light of *Galan,* this court noted that the victims had not provided any information regarding disaggregation and ordered the government to obtain supplemental restitution requests from the victims compliant with *Galan.* (Doc. 47). Only victims "Jane Doe" and "Sarah" provided supplemental restitution reports. (*See* Doc. 51). The parties briefed the additional submissions and, after reviewing the victims' restitution submissions and the parties' briefing on the issue, the court is now ready to rule.

## II. Legal Standard

Statutorily, restitution is mandatory in child pornography cases to any person "harmed as a result of" a defendant's crime. *See* 18 U.S.C. § 2259(a), (c). Restitution is supposed to be "the full amount of the victim's losses," including any costs incurred by the victim for:

> (A) medical services relating to physical, psychiatric, or psychological care; (B) physical or occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3).

In 2014, the United States Supreme Court determined that the plain language of Section 2259 limits restitution only to those losses proximately caused by an individual defendant's conduct. *See Paroline v. United States*, --- U.S. ---, 134 S.Ct. 1710, 1720-22 (2014). Next, as noted above, the Ninth Circuit more recently clarified that *Paroline* also included a disaggregation requirement, holding "distributors and possessors of child pornography cannot be ordered to pay restitution to their victims without the Government first disaggregating the harms caused by these individuals from the harms caused by the so-called "original abuser." *United States v. Chan*, 2016 WL 370712, at *1 (D. Haw. Jan. 26, 2016) (citing *Galan*, 804 F.3d at 1291).

Once the court knows the loss amount attributable to the distributors and possessors, it may apply the *Paroline* factors to determine the proper restitution amount due to the victim. *Galan* at 1289, n. 10. It is the government's burden to prove, by a preponderance of the evidence, the loss amounts the original abuser caused the victim. 18 U.S.C. § 3664(e).

## III.  Discussion

Here, three of the five victims, "Angela," "Cindy," and "C.U.," failed to provide the government with any documentation or information to assist in disaggregating their losses. (*See* Doc. 51 at 2). Without this information, the

4

government cannot prove by a preponderance of the evidence what amount of the victims' losses was caused by the original abuse. As a result, the court cannot engage in the disaggregation required under *Galan*, which in turn prevents the court from proceeding to the *Paroline* analysis. Restitution is not allowed under these circumstances and it is denied.

With respect to victims "Jane Doe" and "Sarah," the government offers the reports of Randall L. Green, Ph. D., which were provided by the victims' attorney. (Doc. 52; 52-1). Dr. Green's December 2 and 8, 2015 reports aim to provide a professional opinion about "Jane Doe" and "Sarah's" "disaggregated" damages, respectively. (Doc. 52 at 1; Doc. 52-1 at 1). But, in both reports, Dr. Green reiterates each woman's losses related to the ongoing possession/distribution harm inflicted with no mention of what harm, if any, each woman suffered due to the original abuse. (*See gen.* Docs. 52, 52-1). He then concludes that the original abuser of each woman is responsible for only 10% of her losses, while the possessors and distributors of the images of abuse are responsible for 90% of her losses. (Doc. 52 at 6; Doc. 52-1 at 8).

The court cannot accept this disaggregation for a few reasons. First, Dr. Green's disaggregation estimate is based off of information he obtained in 2014 when, per the victims' attorney's request, he evaluated "Sarah" and "Jane Doe" to

determine the loss amounts resulting from their knowledge that people possessed

and distributed images of their abuse.   (*See* Doc. 52 at 1) ("I had initially conducted

an extensive initial evaluation of Sarah.   This document is based upon that

information obtained at the time of the July 7, 2014, evaluation.").   (*See also* Doc.

52-1 at 1).   But Dr. Green's 2014 reports do not contain any discussion of either

"Sarah" or "Jane Doe's" losses resulting from the original abuse; his intent at that

time was only to determine losses resulting from the ongoing abuse by

possessors/distributors.   In other words, Dr. Green had no information about how

the initial abuse impacted the women and the losses they sustained as a result when

he made his determination.   He seems to have based his disaggregation

determination on pure speculation.

This suspicion is raised when Dr. Green arrives at the same percentage

allocation for each of the victims - individuals with different backgrounds who

experienced different types of abuse at different ages and presumably coped with the

abuse in very different ways - without any explanation.   In *Galan*, the Ninth Circuit

provided factors to consider in disaggregating the losses such as "the egregiousness

of the original abuse, how the victim can (or does) cope with that kind of abuse when

distribution of images does not follow, and the particular victim's own reactions to

the various traumas to which the victim has been subjected."   804 F.3d at 1291.

6

Dr. Green did not consider any of any of these factors before coming to his 90/10 loss disaggregation.

Third, Dr. Green's disaggregation places the lion's share of the responsibility of the victims' losses on the possessors/distributors, as opposed to the original abuser. That a person who possessed images of the abuse would be responsible for more of the victim's loss than the person who forcibly raped and abused the victim for years defies common sense. The court is not alone in its conclusion. The United States Senate unanimously passed the Amy and Vicky Child Pornography Victim Restitution Improvement Act of 2015, on February 2, 2015, *see* S. 295, 114th Cong. (2015); H.R. 595, 114th Cong. (2015), wherein the original abuser in a child pornography case is responsible for $250,000 in damages to a victim, a distributor is responsible for $150,000 in damages, and a possessor is responsible for $25,000 worth of damages. *Id.* at Sec. 3(c)(2). In other words, the Senate thought it appropriate to hold the original abuser ten times more responsible for the victim's loss than the possessor of the images.

Finally, as United States District Judge Derrick Watson from the District of Hawaii recently pointed out when considering this identical issue, "even if the Court had a reliable allocation among the original abuser(s), on the one hand, and distributors/possessors, on the other, the logical extension of *Paroline*, and more

7

particularly, *Galan* require disaggregation within a given category." *United States v. Chan*, 2016 WL 370712, at \*2 (D. Haw. Jan. 29, 2016). In other words, because *Paroline* and *Galan* require that restitution reflect the consequences of the defendant's *own* conduct, it makes no sense to only disaggregate between original abusers and distributors/possessors; "[d]isaggregation must also occur among distributors and/or among possessors in order to determine the losses caused by the defendant's conduct apart from the losses caused by all others (including fellow possessors.)" *Id.* Judge Watson characterizes such disaggregation "an impossible task." *Id.* This court agrees. Under the current circumstances, there is no mechanism available to the court to determine, by the preponderance of the evidence, what losses the defendant proximately caused the victims when it cannot disaggregate the loss amounts. As a result, it cannot award restitution to "Sarah" and "Jane Doe."

## IV.    Conclusion

For the foregoing reasons, all restitution requests are denied.

DATED this _29th_ day of February 2016.

_Susan P. Watters_

SUSAN P. WATTERS
U.S. District Court Judge

8